(Rev. 5/05)

## FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
## UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

(1) _David Safford_ _252614_
   (Name of Plaintiff)     (Inmate Number)

_HRYCI, Box 9561, Wilmington DE 19809_
   (Complete Address with zip code)

        **⁓ 0 6 - 6 9 2 ⁓**

(2)_____
   (Name of Plaintiff)     (Inmate Number)

        (Case Number)
        ( to be assigned by U.S. District Court)

_____
   (Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed.  Use additional sheets if needed)

      vs.                  **CIVIL COMPLAINT**

(1)_David R. Favata, Esquire_

(2)_Sheryl Rush-Milstead, Esquire_
                                BD scanned

(3)_Delaware department of corrections_     ☒ Jury Trial Requested  NO IFP
   (Names of Defendants)

                               **FILED**

(Each named party must be listed, and all names
mnst be printed or typed.  Use additional sheets if needed)          **NOV 13 2006**

## I.  PREVIOUS LAWSUITS
                               **U.S. DISTRICT COURT**
                               **DISTRICT OF DELAWARE**

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
    including year, as well as the name of the judicial officer to whom it was assigned:

    _David Safford v Attorney General Jane M. Brody and_
    _Warden Rick Kearney S.C.I, Georgetown" filed in 2005_
    _before the Honorable Judge J. Farnam (Case #unavailable)_

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?  ☒ Yes  ☐ No

B.    Have you fully exhausted yonr available administrative remedies regarding each of your present claims?  ☒ Yes  ☐ No

C.    If yonr answer to "B" is Yes:

1.    What steps did you take? *I have filed numerous motions and / or appeals in all State Courts, including Supreme*

2.    What was the result? *all attempts have either received no response, or have been denied.*

D.    If your answer to "B" is No, explain why not: _____

_____

## III.    DEFENDANTS (iu order listed on the caption)

(1)  Name of first defendant: *David R. Favata, Esquire*

Employed as *State's Attorney* at *Assistant Attorney General*

Mailing address with zip code: *102 West Water St., Dover, DE 19901*

_____

(2)  Name of second defendant: *Sheryl Rush-Milstead, Esquire*

Employed as *Defense Counsel* at *Assistant Public Defender*

Mailing address with zip code: *#45 The Green, Dover, DE 19901*

_____

(3)  Name of third defendant: *Delaware Department Of Corrections*

Employed as _____ at _____

Mailing address with zip code: _____

_____

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

Exhibition of Malice by Prosecutorial Manipulation (encl)

1. On 10-16-04, passengers in Plaintiff's car were identified in connection to a previous crime. Harrington Police allege the Plaintiff was implicated in a conspiracy because of an alleged statement or confession by a passenger. No recording was ever produced, and State said on record, witness would only exhonerate.

2. Case was dismissed 9-20-05, but States attorney continued against Plaintiff, under new indictment, on identical grounds, knowing, despite the exhorating evidence of innocence of Plaintiff, targetting Plaintiff singularly in alleged conspiracy, denying him of civil Liberties, and fair and speedy trial, seeking only conviction.

3. Plaintiff was then offered an alternative for immediate relief, before proceeding to arraignment, of new indictment on 9-20-05, and was released to light probation. Efforts for past-conviction relief have produced no results, Plaintiff failed to recover, fell to deep depression, and continues to have persecution from coersion.

## V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. Since the right of a fair and speedy trial in this matter has been forever forsaken, Plaintiff should be free from further prosecution of 10-16-04 arrest, and relieved of punishment and persecution, and have his criminal record removed of any trace.

3

2.  The Court should determine some value for the losses incurred, such as his car, job, and home, and place a monetary value to the pain, suffering, duress and mental anguish, before requiring the Plaintiff be compensated accordingly.

3.  The Court should also determine the afore-mentioned damage incurred by the Plaintiff's immediate family and monetarily compensate them accordingly. It should be noted that the D.O.C. would not allow the Plaintiff-Prisoner attend recently deceased father's funeral.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this $\underline{Sixth}$ day of $\underline{November}$ , 2006.

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

## Exhibition of Malice by Manipulation in Prosecution

An agent of the Attorney General's Office, "the State" manipulated an intricate array of law and circumstance to intimidate and coerce a guilty plea from the innocent Plaintiff for an October 16, 2004 arrest. Plaintiff's "Counsel" an agent of the Public Defender's office, and the Department of Corrections both contributed to the charade by tying the Plaintiff in a vice while the State cranked the screw, squeezing him into submission. The Plaintiff was being attacked from every angle by an angry and powerful government, in a relentless pursuit of a conviction, not justice. No crime had been committed on the day of arrest and if the State's agents had at all any interest in justice, they would have pursued every aspect from the onset. Instead, the State exhausted its' horse before stealing the bit from it's' mouth, then jumped saddles and headed for the hills.

The first indictment was returned in December, 2004, supported by a supposed confession from an alleged co-conspirator, attained after the arrest. In a strategic move, the State abandoned this exhausted indictment because the alleged co-conspirator would not and could not testify as to any guilt on behalf of the Plaintiff. The State then stole the "bit", using evidence from a prior indictment to take control of a new one, thereby jumping saddles. However, this new indictment, was still based on the same foundation as the first, and could never stand the light of trial. The REAL intent behind this indictment was to tighten the "screws", targeting the Plaintiff alone, even in an alleged conspiracy, and evading his right to speedy trial.

The new indictment was returned in early September, 2005, after the court mandated that trial proceed when continued, also in September. Arraignment and trial of both cases were ever so conveniently scheduled for the same day. Trial, of course, did not occur, as State proceeded to arraignment. This is one corner in a trap for the Plaintiff, the only other option was a well baited hook; either prepare for another arduous fight which cannot be won or accept the honey sweetened offer of light probation. Of course, the natural and compulsive desire for liberty won out over the idea of a second, or continued stay with the Department of Correction's first class hospitality. After losing one battle to the State's experienced maneuvering, the weak and wounded Plaintiff succumbed to the State's greater power. With a plea of guilty now immortalized in Court Records, the State ran for cover to the hills.

An agent from the offices of the Public Defender contributed, in part, to this charade by hobbling the Plaintiff's defenses while they were weak. Much of the Plaintiff's efforts preparing for trial were diverted into acquiring the much needed assistance vital to defense, while counsel spent more time refuting these efforts than what was required for even a minimal defense. In this manner, Counsel stayed the Plaintiff for the attack against him. Much of the correspondence is documented in Court record.

Counsel misrepresented the Plaintiff expressed desires on more than one occasion by asking for continuances after the Plaintiff refused to accept plea offers. These violations of the Plaintiff's clearly expressed right to speedy trial were passed off in consolation as the fault of the State or Court when, in fact, they were being recorded as the request of

Page 2

the Plaintiff. In one incident of delay, Counsel revealed Counsel's true colors by asking the Court to delay trial so that the Plaintiff could have a mental evaluation, despite vigorous objection of the Plaintiff, claiming the Plaintiff refused to accept reality of his actions in the alleged crime. Of course the Plaintiff has no such deficiency. He is just not guilty.

The third prong in this trilogy of State agencies is the punishment rationed out by the Department of Corrections. Gruesome tactics are employed here, not limited to mental and physical abuse, over crowding, sleep deprivation, invasion of person and privacy, and poor medical care. The medical department of the Department of Corrections is also cold and impersonal. The most common diagnosis is "you should not have come to jail". Medicine for pain from injuries is seldom dispensed, as those with injuries are condemned to additional suffering. Here we find the insidious jaws of this monster, the vice from which punishment is exacted, irregardless of innocence or guilt.

The Plaintiff has been imprisoned four times in three different facilities in the persecution. The first stop, following arrest, was at the Sussex Correctional Institute in Georgetown, where he was kept until release to probation. Because there was no eye doctor at this institution, he was denied proper eye care. In this situation, it is a handicap causing a severe disability which results in severe headaches and limits mobility. A serious battle was eventually won here, but every attempt to have the time served accredited towards a sentence has failed there is apparently no documented record of it that can be found.

The Plaintiff was next indentured to Sussex Violation of Probation Unit, a forced labor camp. Whether one must pay fines or not, one will work or will get maced. The Department of Corrections claims this is a level four program, but it is not. Time here will not count towards any level five sentence, despite the strict discipline and forced labor. If your name is not called for work, you will be locked down, and may not leave the facility. If you are working, you are being supervised by an armed officer. If you do try to leave, you will be charged with felony escape.

Again the Plaintiff was denied treatment for his handicap. He stayed here twice: 7-14-06 to 7-30-06 and 8-7-06 to 8-28-06. In the last visit the Plaintiff suffered an injury due to neglect, which also was not properly cared for until release and a visit to the emergency room at Wilmington Hospital revealed a fracture. Again, no records of these times served can be found.

SAFFORD
1760 GRANDE VIEW AVE
SEVERN, MD 21144



CERTIFIED MAIL

7006 0810 0005 6224 0083

FIRST CL.

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
844 N KING ST
WILMINGTON, DE 19801